UNITED STATES DISTRICT COURT RECEIVED
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION   2004 SEP -3  P 12: 15

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | | |
|---|---|---|
| MIDLOTHIAN LABORATORIES, L.L.C., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION |
| PAMLAB, L.L.C., and PAN AMERICAN LABORATORIES, L.L.C., | ) ) ) | NO. 2:04CV836-W |
| Defendants. | ) ) | |

## COMPLAINT

NOW COMES MIDLOTHIAN LABORATORIES, L.L.C. ("Midlothian"), plaintiff herein, and, complaining of defendants PAMLAB, L.L.C. and PAN AMERICAN LABORATORIES, L.L.C. (collectively "Defendants"), states as follows:

### Nature And Basis Of Action

1.

This is an action for false advertising, unfair competition and trademark cancellation against Defendants arising from Defendants' application of the same trademark – "Foltx" – to two materially different prescription vitamin products. While both of these products are sold by Defendants through pharmaceutical channels under the same "Foltx" name without further distinguishing indicia, they are referred to herein as "Original Foltx" and "New Foltx" for the sake of clarity.

2.

Defendants' use of the same name – "Foltx" – for both Original Foltx and New Foltx is preventing physicians from differentiating the products when writing prescriptions, and is causing substantial confusion among pharmacists as to which product was intended. Adding to this confusion, Defendants have attempted to recall Original Foltx from pharmacy shelves, instructed pharmacists to fill all prescriptions for "Foltx" with New Foltx, and informed pharmacists that they would be breaking the law if they dispensed a generic version of Original Foltx in response to a prescription for "Foltx," even if the prescription was intended to be filled with Original Foltx (or a generic equivalent thereof).

3.

A number of independent pharmacies, including at least one pharmacy chain based in Tampa, Florida, are resolving this confusion by dispensing New Foltx in response to all prescriptions for "Foltx" without determining whether the physician intended New Foltx or Original Foltx (or a generic version thereof), and refusing to purchase any more generic version of Original Foltx. Plaintiff Midlothian manufactures a generic version of Original Foltx and is being irreparably harmed by these events.

The Parties

4.

Plaintiff Midlothian is an Alabama limited liability company that is in the business of marketing and distributing prescription drug and vitamin products. Midlothian has a principal place of business at 5323 Perimeter Parkway, Montgomery, Alabama 36116.

- 2 -

5.

Defendant Pamlab, L.L.C. ("Pamlab") is a Louisiana limited liability company that is in the business of marketing and distributing prescription drug and vitamin products, including "Foltx." Pamlab is also the record owner of the registration for the trademark "Foltx" on the Principal Register of the United States Patent and Trademark Office. Pamlab has a principal place of business at 4099 Highway 190, Covington, Louisiana 70433.

6.

Pamlab transacts business in Alabama, maintains sales agents in Alabama, and engages in substantial commerce in Alabama by marketing, selling, and distributing drug and vitamin products through its sales agents. In addition, Pamlab's acts and omissions in the state of Alabama have caused the tortious injury and damage complained of herein. As a consequence, Pamlab is subject to the jurisdiction of this Court.

7.

Defendant Pan American Laboratories, L.L.C. ("Pan American") is a Louisiana limited liability company which, on information and belief, is in the business of marketing and distributing prescription drug and vitamin products, including "Foltx."

8.

While the respective roles of Pamlab and Pan American in the marketing and distribution of Foltx are not entirely clear, Pan American's name appears prominently on the front of bottles of "Foltx," and Pan American shares a principal place of business with Pamlab at 4099 Highway 190, Covington, Louisiana 70433.

- 3 -

9.

Upon information and belief, Pan American transacts business in Alabama, and engages in substantial commerce in Alabama by marketing drug and vitamin products in Alabama. In addition, Pan American's acts and omissions in the State of Alabama have caused the tortious injury and damage complained of herein. As a consequence, Pan American is subject to the jurisdiction of this Court.

## Subject Matter Jurisdiction And Venue

10.

This is an action for false advertising and unfair competition arising under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). This Court has subject matter jurisdiction over the Lanham Act claims under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.

11.

This is also an action to cancel Pamlab's registration for the trademark "Foltx" with the United States Patent and Trademark Office. This Court has subject matter jurisdiction to order cancellation of the "Foltx" trademark under 15 U.S.C. § 1119.

12.

This is also an action for unfair competition brought under the common law of the State of Alabama and for violation of the Florida Deceptive and Unfair Trade Practices Act and similar state statutes. This Court has supplemental jurisdiction over Midlothian's state law claims under 28 U.S.C. § 1367.

13.

Venue for this action is proper in the Middle District of Alabama under 28 U.S.C. § 1391(b).

- 4 -

Factual Background

14.

Defendants have marketed Original Foltx under the "Foltx" mark as a prescription

vitamin product since the fall of 1999. The Original Foltx product contains 1.0 mg. of vitamin

B12, 2.5 mg. of folic acid, and 25 mg. of vitamin B6. In 2003, more than 44,000 physicians

wrote prescriptions for Original Foltx, with sales exceeding forty million dollars.

15.

In December of 2003, Midlothian and another prescription drug manufacturer

(Breckenridge Pharmaceuticals) began marketing generic versions of Original Foltx that also

contain 1.0 mg. of vitamin B12, 2.5 mg. of folic acid, and 25 mg. of vitamin B6. Because the

products are generically equivalent to Original Foltx, pharmacists in most states are free (and

often required) to substitute these generic products when patients present prescriptions for

Original Foltx.

16.

In response to this generic competition, Pamlab filed two lawsuits against Midlothian and

Breckenridge – Metabolite Labs., Inc. and Pamlab, L.L.C. v. Midlothian Labs. L.L.C. and

Breckenridge Pharm., Inc., Civ. Action No. 103-cv-2570; and Pamlab L.L.C. v. Rite-Aid

Corporation and Breckenridge Pharm., Inc., Civ. Action No. 2:04cv1115. In both lawsuits,

Pamlab tried and failed to secure a temporary restraining order.

17.

Most recently, in mid-June of 2004, Defendants instituted a recall of Original Foltx and

introduced a "new" product that contains 2.0 mg. of vitamin B12, 2.5 mg. of folic acid, and 25

mg. of vitamin B6. Defendants have named their new product simply "Foltx," without any

- 5 -

indicia to distinguish it from the Original Foltx that it had marketed since 1999. This new product is referred to herein as "New Foltx."

18.

Because Original Foltx and New Foltx contain different amounts of the active ingredient vitamin B12, pharmacists do not consider the products generically equivalent and will not dispense New Foltx in response to prescriptions written for Original Foltx. Similarly, because generic versions of Original Foltx are not generically equivalent to New Foltx, pharmacists will not dispense generic versions of Original Foltx in response to prescriptions written for New Foltx.

19.

Because Defendants are marketing New Foltx simply as "Foltx" in many pharmaceutical channels, without any branding indicia to distinguish New Foltx from Original Foltx, physicians are unable to distinguish between New Foltx and Original Foltx when writing prescriptions for either product, and pharmacists are unable to determine whether New Foltx or Original Foltx was intended when they are asked to fill new or refill prescriptions written simply for "Foltx." Adding to this confusion, Defendants have attempted to recall all Original Foltx from pharmacy shelves, instructed pharmacists to dispense New Foltx in response to all new "Foltx" prescriptions and refills of existing prescriptions, informed pharmacists that they would be breaking the law if they dispensed a generic version of Original Foltx in response to a prescription for "Foltx," and instructed wholesalers to "link" the two products so that they ship the New Foltx to pharmacists whenever pharmacists order the Original Foltx.

- 6 -

20.

Defendants have also misrepresented to pharmacists and physicians that they have introduced New Foltx because it is safer and more effective than Original Foltx (and by implication Midlothian's generic equivalent). In a letter that Defendants sent to physicians and pharmacists, Defendants state: "The significant change to FOLTX® [increasing the amount of vitamin B12 from 1.0 mg. to 2.0 mg.] is based upon two important principles: SAFETY and EFFICACY."

21.

Defendants' actions had little effect on Midlothian's sales of its product when Defendants first introduced New Foltx on June 14 of this year. More recently, however, a number of independent pharmacies and one pharmacy chain (Eckerd Pharmacy), informed Midlothian that they would no longer purchase any of Midlothian's generic equivalent of Original Foltx, thus leaving their pharmacists with no choice but to dispense New Foltx even if the physician intended that Original Foltx (or a generic equivalent) be dispensed. Upon information and belief, pharmacists around the country are dispensing New Foltx in response to all prescriptions for "Foltx," without determining whether the physician intended New Foltx or Original Foltx (or a generic equivalent thereof).

22.

Midlothian is being injured every time a pharmacist decides no longer to offer Midlothian's product when presented with prescriptions written simply for "Foltx." This injury is irreparable because Midlothian's ability to reenter this market, and to persuade pharmacists to dispense its product as a generic alternative, becomes more difficult each day as New Foltx becomes more entrenched in the marketplace.

- 7 -

23.

Consumers are being irreparably harmed because they are ingesting a product that their physicians did not intend. Consumers and third party payors are also being injured because they are being forced to pay brand-name prices for New Foltx when the physician prescribed Original Foltx (or a generic version thereof). These parties' losses are also irreparable because they will never be compensated in money damages.

24.

Defendants could have avoided this confusion simply by adding a prefix or suffix to the Foltx mark, as is common in the prescription drug industry when a product undergoes a material reformulation. For example, they could have called New Foltx "Foltx NS" (wherein the "NS" stands for "new strength").

25.

Indeed, pharmacists and others in the prescription drug industry have come to expect prescription products such as Original Foltx to receive new names when they undergo a material reformulation based upon state and federal laws that declare it unlawful to offer for sale a drug or vitamin product "under the name of another article." See Code of Ala. §§ 20-1-25 and 20-1-26; Fla. Stat. §§ 499.007 and 500.11; and 21 U.S.C. §§ 343 and 352.

26.

Pharmacists are not the only parties being confused by Defendants' failure to give New Foltx a new name. When a patient is prescribed one medication and dispensed another by his or her pharmacist, the patient is usually able to detect the error by comparing the prescription to the label on the prescription bottle. However, because Pamlab has not given New Foltx a new name,

the label that pharmacists affix to prescription bottles of New Foltx does not allow patients to detect such errors.

27.

Defendants' failure to give New Foltx a new name is also injuring third party payors by forcing them to pay to reimburse prescriptions filled with New Foltx when the lower priced Original Foltx (or generic equivalent thereof) was intended. On information and belief, if Defendants gave New Foltx a new name, pharmacists could not submit reimbursement requests for New Foltx based upon prescriptions written for Original Foltx.

## COUNT I

### Violation of Lanham Act § 43(a) (15 U.S.C. § 1125(a)) – Improper Use of "Foltx" Mark

28.

Plaintiff hereby incorporates paragraphs 1 through 27 above by reference in Count I as if fully set forth herein.

29.

The Foltx mark has become associated in the minds of physicians, pharmacists, patients, and third party payors with the Original Foltx product that Defendants have marketed since 1999.

30.

Defendants' use of the "Foltx" mark in pharmaceutical channels to identify New Foltx without adequate indicia to distinguish New Foltx from Original Foltx is causing substantial confusion in the minds of pharmacists as to whether the New Foltx on their shelves is the product intended by prescribing physicians.

31.

Defendants' conduct complained of herein, including Defendants' use of the "Foltx" mark in prescription pharmaceutical channels to identify New Foltx, falsely implies to pharmacists that New Foltx is responsive to all (or substantially all) prescriptions written for "Foltx" when in fact it is not.

32.

Defendants' use of the "Foltx" mark in pharmaceutical channels to identify New Foltx falsely implies to physicians, patients, and third party payors that New Foltx, when dispensed by pharmacists, is responsive to new prescriptions or refills of prescriptions written by physicians intending to prescribe Original Foltx, when in fact it is not.

33.

As a consequence of these false implications, pharmacists are in many cases dispensing a materially different product to patients than their physicians intended, patients are ingesting and paying brand-name prices for a product that their physicians did not intend, and third party payors are reimbursing for prescriptions written for Original Foltx based upon the higher price of a materially different product.

34.

Defendants' use of the mark "Foltx" to identify its New Foltx product constitutes the use in commerce of a word, term, name, symbol or device that is likely to cause confusion, or to cause mistake, or to deceive as to the sponsorship, or approval of Defendants' goods by another person and misrepresents the nature, characteristics, or qualities of Defendants' goods, all in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

35.

The foregoing false implications and confusion were intended by Defendants, have had a material effect on the purchasing, dispensing, and prescribing decisions of physicians, pharmacists, patients, and third party payors, affect interstate commerce due to the nationwide markets for New Foltx and generic versions of Original Foltx, and are causing Midlothian irreparable harm.

COUNT II

Violation of Lanham Act § 43(a) (15 U.S.C. § 1125(a)) –
False Advertising Regarding Safety and Efficacy of Original Foltx

36.

Plaintiff hereby incorporates paragraphs 1 through 35 above by reference in Count II as if fully set forth herein.

37.

If New Foltx is not materially different than Original Foltx or deserving of distinguishing branding indicia, then Defendants are falsely representing (1) that New Foltx is more safe and effective than Original Foltx, and (2) that pharmacists violate the law when they dispense Midlothian's product in response to prescriptions written for New Foltx.  If New Foltx is not materially different than Original Foltx, then these representations are creating substantial confusion and deception in the marketplace and disparaging Midlothian's product.

38.

Each of the foregoing statements by the Defendants constitutes a false or misleading description of fact, or false or misleading representation of fact, which misrepresents the nature,

characteristics, or qualities of Defendants' and Midlothian's goods, all in violation of section

43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

39.

The foregoing deception and confusion were intended by Defendants, have had a material

effect on the purchasing, dispensing, and prescribing decisions of physicians, pharmacists,

patients, and third party payors, affect interstate commerce due to the nationwide market for New

Foltx and generic equivalents of Original Foltx, and are causing Midlothian irreparable harm.

## COUNT III

### Inducement to Violate Lanham Act § 43(a) (15 U.S.C. § 1125(a))

40.

Plaintiff hereby incorporates paragraphs 1 through 39 above by reference in Count III as

if fully set forth herein.

41.

Through its conduct complained of herein, Defendants have discouraged pharmacists

from determining whether New Foltx or Original Foltx is responsive to prescriptions written for

"Foltx," and have induced pharmacists to dispense New Foltx in response to new and refill

prescriptions intended to be filled with Original Foltx.

42.

When pharmacists dispense New Foltx in response to prescriptions for which Original

Foltx was intended, in bottles that do not permit the patient to determine whether the product

dispensed is responsive to the physician's prescription, they are impliedly misrepresenting to

their customers that the product dispensed is responsive to the prescription written by the

physician. They are also impliedly misrepresenting that they have resolved any confusion stemming from the physician's failure to specify New Foltx or Original Foltx in the prescription.

43.

Each of the foregoing implied misrepresentations by pharmacists constitutes a false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the sponsorship, or approval of Defendants' goods and misrepresents the nature, characteristics, or qualities of Defendants' goods, all in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

44.

These pharmacists' implied misrepresentations were intended by Defendants, have had a material effect on the purchasing, dispensing, and prescribing decisions of physicians, patients, and third party payors, affect interstate commerce due to the nationwide market for New Foltx and generic equivalents of Original Foltx, and are irreparably injuring Midlothian.

## COUNT IV

### Violation and Inducement to Violate the Common Law of Alabama

45.

Plaintiff hereby incorporates paragraphs 1 through 44 above by reference in Count IV as if fully set forth herein.

46.

Defendants' actions complained of herein constitute unfair competition and inducement of unfair competition in violation of the Common Law of the State of Alabama.

- 13 -

47.

Defendants are liable to Midlothian for all damages that Midlothian has suffered and will suffer as a consequence of Defendants' tortious behavior.

COUNT V

Violation and Inducement to Violate State
Statutes Governing Deceptive and Unfair Trade Practices

48.

Plaintiff hereby incorporates paragraphs 1 through 47 above by reference in Count V as if fully set forth herein.

49.

The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") provides at Fla. Stat. § 501.204(1) that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Fla. Stat. § 501.211 allows "anyone aggrieved by a violation" of the FDUTPA to secure a declaration of such violation, an injunction against further violation, and actual damages and attorney fees.

50.

Other states have comparable laws that govern deceptive and/or unfair trade practices, that provide comparable statutory causes of action based upon their violation, and that afford similar relief to injured business competitors.

51.

Pharmacists in Florida and other states that have such comparable laws have stopped purchasing Midlothian's generic version of Original Foltx as a consequence of Defendants' actions complained of herein.

52.

Defendants' actions complained of herein constitute unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices under the FDUTPA and comparable laws in other states, and constitute per se violations inasmuch as they violate the vitamin product misbranding provisions of one or more of Fla. Stat. §§ 500.11 and 500.115, among other state statutes governing deceptive behavior. Defendants' actions further constitute inducement of pharmacists to commit such violations.

53.

Defendants are liable to Midlothian for all damages that Midlothian has suffered and will suffer as a consequence of Defendants' statutory violations.

## COUNT VI

### Cancellation of "Foltx" Registration Under 15 U.S.C. § 1119

54.

Plaintiff hereby incorporates paragraphs 1 through 53 above by reference in Count VI as if fully set forth herein.

55.

Upon information and belief, Pamlab is the owner of registration number 2,547,853 issued by the United States Patent and Trademark Office ("USPTO") for the mark "Foltx" in

- 15 -

connection with folic acid/b-complex medical food supplements. The registration is on the Principal Register of the USPTO.

56.

Defendants' use of the "Foltx" mark for products that are substantially different, with the intent and effect of causing confusion among and deceiving physicians, pharmacists, patients, and third party payors concerning the intrinsic nature, qualities, and characteristics of the product to which the mark is attached, has resulted in an abandonment of its "Foltx" mark, as the "Foltx" mark has lost its source identifying function and ability to serve as a valid trademark. As a consequence, the registration for the mark should be cancelled from the Principal Register of the USPTO.

## Prayer for Relief

WHEREFORE, Plaintiff respectfully requests this Court to grant the following relief:

1.     An order enjoining Defendants from affixing the "Foltx" mark to any product other than Original Foltx, or associating the "Foltx" mark in any communications media to any product other than Original Foltx, without appropriate distinguishing indicia;

2.     An order enjoining Defendants from communicating with pharmacists concerning the legality of dispensing Midlothian's generic product in response to prescriptions written for "Foltx";

3.     An order requiring Defendants to recall all New Foltx that is on pharmacy and wholesaler shelves, and to relabel the product so as to clearly distinguish the product from Original Foltx;

- 16 -

4.     An order requiring Defendants to notify pharmacists that New Foltx is not responsive to all prescriptions written for "Foltx," and informing pharmacists that New Foltx is not to be dispensed in response to all new and refill prescriptions for "Foltx";

5.     An order enjoining Defendants from engaging in any further acts that have the effect of inducing pharmacists to indiscriminately dispense New Foltx in response to new and refill prescriptions of "Foltx";

6.     An order enjoining Defendants from representing to the market that New Foltx is any more safe and effective than Original Foltx, or that it reformulated Original Foltx for reasons of safety and efficacy;

7.     An order directing the Commissioner for Patents and Trademarks to cancel registration number 2,547,853 for FOLTX from the principal trademark register of the USPTO;

8.     An award to Midlothian of all damages sustained by Midlothian as a consequence of Defendants' unlawful and tortious conduct, as equitably measured under 15 U.S.C. § 1117(a), the common law of the State of Alabama, and the FDUTPA, among other laws;

9.     A declaration that this case is exceptional and an award to Plaintiff of its reasonable attorney fees incurred prosecuting this action, pursuant to 15 U.S.C. § 1117(a) and Fla. Stat. § 501.2105, among other laws that support such relief; and

10.     Such other and further relief as this Court deems just and appropriate.

### JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Midlothian hereby demands a trial by jury of all issues in this action triable of right by a jury.

Respectfully submitted, this _3_ day of September, 2004.

_Frank J. Stakely_

Frank J. Stakely

Attorneys for Plaintiff Midlothian Laboratories, L.L.C.

RUSHTON, STAKELY, JOHNSTON & GARRETT, P.A.
184 Commerce Street
Montgomery, Alabama 36104
334-834-8480 (phone)
334-262-6277 (fax)

OF COUNSEL:

Bruce W. Baber (Ga. Bar No. 030050)
Clark G. Sullivan (Ga. Bar No. 691092)
Jill Wasserman (Ga. Bar No. 739662)
KING & SPALDING LLP
191 Peachtree Street
Atlanta, Georgia 30303
404-572-4600 (phone)
404-572-5145 (fax)