```
       THE DISTRICT COURT OF THE UNITED STATES FOR THE

         MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


MIDLOTHIAN LABORATORIES,    )
L.L.C.,                     )
                            )
     Plaintiff,             )
                            )   CIVIL ACTION NO.
     v.                     )   2:04cv836-MHT
                            )        (WO)
PAMLAB, L.L.C., and PAN     )
AMERICAN LABORATORIES,      )
L.L.C.,                     )
                            )
     Defendants.            )
```

SUPPLEMENTAL OPINION

This lawsuit is again before the court, this time on Midlothian's motion for reconsideration of the opinion and order entered on August 28, 2007, where this court held that summary judgment was not due in favor of Midlothian on Pamlab's counterclaim and that the counterclaim should go to trial. <u>Midlothian Laboratories, L.L.C. v. Pamlab, L.L.C.</u>, ___ F. Supp. 2d ___, 2007 WL 2458409 (M.D. Ala. 2007).  The court premised its holding on the following statements:

> "However, at least one test of Midlothian's product revealed the presence of only two of the three active ingredients found in Foltx. This evidence alone indicates that Midlothian at some time marketed a product that was not pharmaceutically equivalent to Foltx, a standard that Midlothian itself argues is required for the representation of bioequivalence made in its advertisement. Therefore, the evidence before the court, when viewed in the light most favorable to Pamlab as the non-moving party, creates a triable issue of fact as to whether Midlothian's tests established pharmaceutical equivalence (a standard for a 'tests prove' claim), as well as whether Midlothian's product was in fact pharmaceutically equivalent to Foltx (the standard for a 'bald' claim of literal falsity)."

Id. at \_\_\_, 2007 WL 2458409, at \*17 (footnotes omitted). The court further stated that, "for the same reasons [that summary judgment on Pamlab's false-advertisement claim] was denied on the 'bioequivalent' statement," summary judgment "is [also] due to be denied on ... the 'generic equivalent' statement." Id. at \_\_\_, 2007 WL 2459409, at \*19.

In making these statements, the court relied on "Exhibit 10 to Exhibit D to Pamlab's unified supplemental response to Midlothian's motion for summary judgment on counterclaim and reply in support of defendants' motion for summary judgment (Doc. No. 82), product analysis report appended to the deposition of Roger Graben." Id. at ___, 2007 WL 2458409 at *17 n.55. Both Midlothian and Pamlab have now informed the court that it was mistaken about Exhibit 10 in that the testing described in Exhibit 10 was not on Midlothian's product but rather on Foltx.

Pamlab maintains that its counterclaim must still survive summary judgment for three reasons. First, Pamlab argues that the certificates of analysis, upon which Midlothian relied to show pharmaceutical equivalence, are flawed because of the time and manner in which the certificates were produced for this litigation. Be that as it may, however, Pamlab's argument, at best, raises a mere discovery dispute over the timeliness of

discovery production, and simply does not go to the issue of the reliability of the certificates.

Pamlab also argues that the certificates are unreliable because they were produced over 14 months after Midlothian's product appeared on the market. However, there is undisputed deposition testimony of Rhonda Yeater confirming that the certificates of analysis bore the date of the request of the certificates by Midlothian, not the date of the actual testing, and that the data in the certificates of analysis were generated and gathered at around the time of manufacture of Midlothian's product on January 8, 2004, and not on the date of request on the certificate of analysis, which is March 18, 2005. See Exhibit 1 to Midlothian's reply in support of its motion for summary judgment on defendants' counterclaim (Doc. No. 85). Pamlab responds that the certificates still do not meet FDA regulations that provide that, "Laboratory records shall include complete data derived from all tests necessary to assure

compliance with established specifications and standards, including examinations and assays, as follows: ... The initials or signature of the person who performs each test and the date(s) the tests were performed." 21 C.F.R. § 211.194.  However, Pamlab is making a false-advertising claim, and Midlothian has not advertised its product as meeting tests established under the FDA regulations.

Finally, Pamlab makes much of the fact that newly submitted evidence shows that Exhibit 10 actually was a test for the new, reformulated Foltx, not original Foltx and that, as a result, the testimony of Midlothian's expert, Roger Graben is drawn into question because he relied on Exhibit 10 to show the equivalency between Midlothian's product and original Foltx.  Pamlab argues that, for an equivalency determination, there must be an equation with two sides and that, even if Midlothian provided, with the certificates of analysis, the data for the 'generic side' of the equation, it used the wrong

product, that is, reformulated Foltx, for the 'original product side.'  In other words, according to Pamlab, Midlothian's equation compared apples with oranges. Graben's testimony is clear, however, that he compared applies to apples, for, while he factored Exhibit 10 into his thorough consideration of all evidence, it was not Exhibit 10 but rather the label for original Foltx that was the basis for the original product side of the equation.  Exhibit D to Pamlab's unified supplemental response to Midlothian's motion for summary judgment on counterclaim and reply in support of defendants' motion for summary judgment (Doc. No. 83), deposition of Roger Graben, at 92.  In response to the question about his basis for stating that "Foltx and the Midlothian product[] meet the conditions of pharmaceutical equivalents," id., Graben testified:

> "A. They have the same composition, they're the same strength and same dosage form.
>
> "Q. And how do you know that?

**"A. By comparison of the labeling.**

**"Q. So your evidence and support of the statement that these are pharmaceutically equivalent are the labels?**

**"A. Yes**

**"Q. Is there anything else you relied on to determine that these two products are pharmaceutically equivalent?**

**"A. No."**

**Id. PamLab tries to say that later testimony from Graben makes the above testimony ambiguous. But, after reviewing all of Graben's testimony in the record, the court concludes the Pamlab's attempt to undermine the above clear testimony must fail.**

**Midlothian's motion for reconsideration should therefore be granted, and summary judgment should be entered in favor of Midlothian on Pamlab's counterclaim. An appropriate judgment will be entered.**

**DONE, this the 12th day of September, 2007.**

**/s/ Myron H. Thompson**
**UNITED STATES DISTRICT JUDGE**